IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| J. ERIC LARSEN, | ) CIVIL ACTION NO.: 2:24-cv-07164-DCN-SVH |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **COMPLAINT** |
| | ) (Jury Trial Demanded) |
| APPLE, INC., and APPLE STORES, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **INTRODUCTION**

1.  Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq.* (hereinafter "Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA"), and 42 U.S.C. §1981 (hereinafter "Section 1981"), based on age discrimination, race discrimination, sex/sexual orientation discrimination and retaliation.

## **PARTIES**

2.  The Plaintiff, J. Eric Larsen (hereinafter "Larsen" or "Plaintiff"), is a 51-year-old, male, homosexual, Caucasian, citizen and resident of Charleston County, South Carolina.

3.  Defendant, Apple, Inc. (hereinafter "Apple"), is a corporation, organized and existing under the laws of a state other than South Carolina, with its principal place of business in a state other than South Carolina. Upon information and belief, Defendant Apple Stores is a corporation organized and existing under the laws of a state other than South Carolina, which has its principal places of business in a state other than South Carolina, Inc. and at all times relevant Defendants jointly employed Plaintiff. Defendants transact substantial business in South Carolina. Defendants

1

are employers in an industry affecting commerce, who employ more than 500 employees, and are "employers" within the meaning of Title VII and the ADEA. At all times relevant, Defendants employed Plaintiff. The wrongful discriminatory actions of which the Plaintiff complains occurred in South Carolina.

## JURISDICTION, VENUE, AND TRIAL BY JURY

4.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1332, 28 U.S.C. §§ 1343(3) and 1343(4), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 623(a). Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391, because this is the State where the alleged discriminatory actions and violations took place, and this is the judicial district where Plaintiff would have worked, but for the unlawful employment practices of the Defendant. Plaintiff requests a trial by jury for all issues which may be submitted to a jury.

## CONDITIONS PRECEDENT

5.  The Plaintiff timely filed an administrative charge with the Equal Employment Opportunity Commission (EEOC). Plaintiff's charge is attached as Exhibit A, and is incorporated herein by reference.

6.  The EEOC issued a "Notice of Right to Sue" dated September 12, 2024. That document is attached hereto as Exhibit B.  This lawsuit is timely filed.

## STATEMENT OF FACTS

7.  Eric Larsen, the Plaintiff, is a fifty-one year-old, gay, Caucasian male.

8.  Larsen has been employed by the Defendants Apple, Inc., and Apple Stores for fifteen years, and has an exemplary record, as evidenced by his consistent and numerous positive performance reviews.

9. For thirteen of those years, he has been an Apple Store Leader, and he additionally participates in extended experience as a People Business Partner supporting multi-unit stores.

10. In 2017, Mr. Larsen was employed as Store Leader at #R060, Roosevelt Field Apple Store in Garden City, New York. The Roosevelt Field Apple Store had a sales volume in excess of approximately $70,000,000.00 with roughly 200 employees.

11. Plaintiff decided he would like to move to Charleston, South Carolina, where there was an open position for Store Leader at the King Street Apple Store.

12. The Plaintiff applied for the Store Leader position at the King Street Apple Store, which had considerably smaller volume than the Roosevelt Field Apple Store where he was employed as Store Leader.

13. Mr. Larsen was interviewed by Monica Perkins, who is the Hiring Manager and Market Leader for the Charleston Store.

14. Prior to the interview, Mr. Larsen was told by his own Market Leader that he was Ms. Perkins' top candidate.

15. Later, at the interview, where they met in person for the first time, Ms. Perkins showed peculiar interest in Plaintiff's personal life and directed the interview almost entirely to that subject—including discussions of Plaintiff's husband and their home life. Ms. Perkins showed virtually no interest in Plaintiff's Apple managerial experience during that prolonged interaction.

16. Plaintiff was denied the Charleston Store Leader position at that time and was given an irrational explanation for his non-selection.

17. As a result, Mr. Larsen worked with Apple Employee Relations to review the decision.

18. Plaintiff's Market Director had told him that he had learned the real, undisclosed reason for his non-selection was that the hiring manager/Market Leader, Monica Perkins, thought that

given where he was in his career, that he was seeking to "sunset his career" and "take on an easier store."

19.     Plaintiff believed this was discrimination on account of his age, and he raised the issue.

20.     Plaintiff was not provided any relief as a result of a subsequent investigation, but his Market Director committed to getting assurances from the Charleston Market Director, Heidee Albany, that she was committed to getting Mr. Larsen to Charleston when the position opened again.

21.     Additionally, Plaintiff was personally assured by Ms. Albany that she was committed to getting him to Charleston when the position opened again.

22.     Under these circumstances, Plaintiff decided not to pursue a formal EEOC charge at that time.

23.     Plaintiff moved to Charleston, South Carolina, and his New York Market Leader assisted him in obtaining his current position as Store Leader in the Augusta, Georgia, Apple Store R364, a comparatively smaller store and a 6-hour round trip from Plaintiff's home in Charleston.

24.     For a time, Plaintiff and his partner maintained a condominium in Augusta, but the two residences were prohibitively expensive.

25.     After putting in another five years of additional exemplary performance in Augusta and lauded business impact nationwide, Plaintiff was excited when the Store Leader position at the Charleston Apple Store opened again.

26.     Plaintiff formally applied for the position and reintroduced himself, highlighting, among other things, his continued accomplishments, including his experience in human resources as an Apple People Business Partner, and his deepened roots in the Charleston community, where he is an active resident.

27.     Plaintiff went directly to Phase 2 of the interviewing process (as is Apple's formal process),

and he again interviewed with Monica Perkins, Market Leader and hiring manager. Though Ms. Perkins was accompanied by a peer at the interview, Ms. Perkins was the ultimate decision maker, as is the process.

28.     Plaintiff was not selected for the position. This was an adverse employment action. The Augusta store is smaller than the Charleston store. The economic opportunities in the Augusta market are much smaller than those in the Charleston market. The Augusta SMSA has a population of roughly 600,000. The Charleston SMSA has 800,000. Estimates of the economic impact of tourism on Augusta show $813 million in 2022. https:// augustagoodnews.com/tourism-numbers-show-augusta-is-more-than-golf/ During the same year in Charleston, the economic impact of tourism was $12.6 *billion*. https://www.postandcourier.com/ business/as-tourism-impact-hits-record-12-8b-charleston-seeks-to-balance-visitors-preservation/ article_5dfd6960-f5be-11ed-b7d2-736a45ea0d8a.html . As for prestige, Charleston has been ranked the best small city in the country by readers of Travel + Leisure for 12 of the last 13 years. Conde Nast Traveler named Charleston the best city in the country and then named it best city in the world. The Charleston Apple store is of modernist design, surrounded by luxury retailers, and located on iconic King Street – a must destination for tourists and locals alike. The Charleston Apple store offers more professional visibility, prestige and economic potential than that of any other small city in the U.S. It certainly offers more than Augusta. Consequently, Charleston offered Mr. Larsen much greater opportunities for personal achievement including, but not limited to, financial achievement. Putting aside the burden of his current six-hour commute to Augusta – a situation that Apple has routinely addressed by transfers so as to accommodate employees and managers other than Mr. Larsen – it is obvious that the rejection of Mr. Larsen's application for employment at the Charleston Apple store was an adverse employment action.

29.     Upon information and belief, the position has been filled by someone brought in to assist the Store Leader who had been selected in 2018, who was by then having significant performance problems, allegedly involving cultural and racial issues.

30.     Upon information and belief, the 2018 Store Leader has been let go, and the position has now been given to a much younger, much less qualified, far less experienced African-American candidate who needed to be promoted into the role.

31.     As a Store Leader for over thirteen years, and an Apple Store Senior Manager for two years prior to that, Plaintiff has significant experience with successfully resolving extreme cultural and morale issues at stores to which he was assigned. For example, at the Roosevelt Field store, that store went from having among the lowest employee satisfaction scores among all Apple stores globally prior to his arrival to consistently very high positive scores as a result of his leadership. Ms. Perkins had knowledge of this information prior to her decisions.

32.     There is no legitimate, nondiscriminatory reason to believe that the current Store Leader's being African-American would make a less qualified, younger, less experienced candidate a better choice for a Store Leader at the Charleston store.

33.     Plaintiff has since learned from the 2018 Store Leader that Apple put immense pressure on her to replace Caucasian employees with African-Americans, and she was told that they would not be happy until they had an African-American in the Store Leader role.

34.     Given the foregoing, it is certain that the Plaintiff was not selected as Store Leader at the Charleston Apple Store for one or more unlawful reasons: in retaliation for his raising complaints after his non-selection in 2018—the recent hiring at the Charleston Store was the first opportunity Ms. Perkins had to retaliate against him; his race; his age; and his sexual orientation.

35.     Plaintiff filed his EEOC Complaint, alleging all of the foregoing on June 13, 2023, attached

as Exhibit A and incorporated herein by reference.

36. Since that time, Plaintiff has been subjected to retaliatory action by the Defendants, including, but not limited to:

a) Plaintiff's direct supervisor and Market Leader has willfully and deliberately caused Plaintiff to look bad in front of his team, set him up for failure, and given him directions to violate company policy. She has misrepresented their interactions. She has misrepresented Plaintiff's performance among his team and among other leaders. She has been angry and confrontational for no good reason. Plaintiff made HR aware of her improper conduct, but HR dismissed his concerns. She has undermined his relationships with his subordinates.

b) Plaintiff was slandered by managerial employees of the Defendant;

c) Several of Plaintiff's direct employees, at a company sponsored event, were asked to spy on him by another Store Leader. He asked them to be his "personal circle of trust" at the Augusta store and to report anything being done wrong by the Plaintiff or anything bad that was happening under the Plaintiff directly to him. One of Plaintiff's former managers, now in another location, has seen a concerted effort made against the Plaintiff by leaders outside the store for months. These interactions have made Plaintiff's employees feel very uncomfortable and lead to distrust of higher ups outside the store.

d) Plaintiff received one of the lowest bonus amounts and salary increases he has ever received, despite aiding in creating a training and development policy that Plaintiff personally helped roll out to every store in North America and Brazil;

e) Finally, Apple recently moved Plaintiff and his store into the Charleston Market, making his new direct supervisor Monica Perkins, the individual who played a substantial role in discriminatorily denying him equal employment opportunity.

## FOR A FIRST CAUSE OF ACTION

### (Race Discrimination in Violation of Title VII)

37. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

38. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against him with respect to the terms, conditions and privileges of his employment, including the non-selection of the Plaintiff on account of his race and by depriving him of employment opportunities; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

39. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A SECOND CAUSE OF ACTION

### (Age Discrimination in Violation of the ADEA)

40. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

41. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against him with respect to the terms, conditions and privileges of his employment, including the non-selection of the Plaintiff on account of his advanced age and by depriving him of employment opportunities; all in violation of §4(a) of the Age Discrimination in Employment Act, 29 U.S.C. §623(a).

42. The actions and omissions of Defendants proximately caused actual damages to Plaintiff. Additionally, the actions and omissions of Defendants were willful, malicious and in bad faith, and Plaintiff is entitled to liquidated damages.

## FOR A THIRD CAUSE OF ACTION

### (Sex/Sexual Orientation Discrimination in Violation of Title VII)

43.     Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

44.     By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by harassing him and discriminating against him with respect to the terms, conditions and privileges of his employment, including the non-selection of the Plaintiff on account of his sex/sexual orientation and by depriving him of employment opportunities; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

45.     The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Title VII)

46.     Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

47.     By acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against Plaintiff for his lawful and protected reports of harassment and discrimination, after learning of his filing his EEOC Complaint, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

48.     The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A SIXTH CAUSE OF ACTION

### (Retaliation in Violation of the ADEA)

49.     Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

50. By acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against Plaintiff for his lawful and protected reports of harassment and discrimination, both before due to his internal complaints and after learning of his filing his EEOC Complaint, all in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

51. The actions and omissions of Defendants proximately caused actual damages to Plaintiff. Additionally, the actions and omissions of Defendants were willful, malicious and in bad faith, and Plaintiff is entitled to liquidated damages.

## FOR A SEVENTH CAUSE OF ACTION

**(Race Discrimination in Violation of Section 1981)**

52. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

53. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against him with respect to the terms, conditions and privileges of his employment, including the non-selection of the Plaintiff on account of his race and by depriving him of employment opportunities; all in violation of 42 U.S.C. §1981.

54. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR AN EIGHTH CAUSE OF ACTION

**(Retaliation in Violation of Section 1981)**

55. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

56. By the acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against Plaintiff for his lawful and protected reports of harassment and discrimination, after learning of his filing his EEOC Complaint, all in violation of 42 U.S.C. §1981.

57. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against the Defendant, as follows:

1. For all relief available under Title VII, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees;

2. For all relief available under the ADEA, including back pay, front pay, liquidated damages, costs and attorney's fees;

3. For all relief available under Section 1981, including compensatory damages, punitive damages, costs and attorney's fees;

4. For the Plaintiff's costs and a reasonable attorney's fees, pursuant to all applicable provisions of law, and for such other and further relief as the Court deems proper, just and equitable.

*(Signature Page to Follow)*

GIBBS & HOLMES

s/Tim O. Lewis
Allan R. Holmes (ID#1925)
A. Riley Holmes, Jr. (ID#11115)
Timothy O. Lewis (ID#9864)
171 Church Street, Suite 110
Post Office Box 938
Charleston, S.C.  29402
(803) 722-0033

ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina

December 10, 2024